FILED COPY

JOHN M. McCOY III, Cal. Bar No. 166244
Email: mccoyj@sec.gov
SPENCER E. BENDELL, Cal. Bar No. 181220
Email: bendells@sec.gov
DAVID M. ROSEN, Cal. Bar No. 150880
Email: rosend@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
John M. McCoy III, Associate Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

2011 OCT 18 AM 11: 27

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY_____

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

CV 11-08607 R (DTBx)

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| vs. | |
| CHARLES P. COPELAND, COPELAND WEALTH MANAGEMENT, A FINANCIAL ADVISORY CORPORATION, and COPELAND WEALTH MANAGEMENT, A REAL ESTATE CORPORATION; | |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78(u)(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a), and Sections 209(d), 209(e)(1) and 214(a) of the

Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-9(d), 80b-9(e)(1) & 80b-14(a). Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

2. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), Section 27 of the Exchange Act, 15 U.S.C. § 78aa(a), and Section 214(a) of the Advisers Act, 15 U.S.C. § 80b-14(a), because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district, Defendant Charles P. Copeland resides in this district, and Defendants Copeland Wealth Management, A Financial Advisory Corporation and Copeland Wealth Management, A Real Estate Corporation are located in this district.

## SUMMARY

3. This matter involves fraud and breach of fiduciary duty by Charles P. Copeland, a certified public accountant, through registered investment adviser Copeland Wealth Management, A Financial Advisory Corporation ("CWM") and unregistered investment adviser Copeland Wealth Management, a Real Estate Corporation ("Copeland Realty") (collectively referred to as the "Defendants"). From 2003 through May 31, 2011, the Defendants raised over $60 million from over 100 investors, including many of Charles Copeland's tax clients, by selling interests in 23 limited partnerships operated by CWM and Copeland Realty. Throughout the offer and sale of the limited partnerships, the Defendants made material misrepresentations and omissions in the offer, sale and/or purchase of 21 of the 23 limited partnerships regarding: (1) the use of investor funds, (2) conflicts of interest, (3) guaranteed returns, (4) the unauthorized trading of put options, and (5) the payment of undisclosed real estate commissions and other related compensation.

4. Defendant Charles Copeland violated the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 17(a); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, both as a primary violator, and as a control person of CWM and Copeland Realty pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a); and Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) & 80b-6(2).

5. Defendants CWM and Copeland Realty violated the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 17(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, and Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) & 80b-6(2).

6. By this action, the Commission seeks permanent injunctions prohibiting future such violations, a receiver over CWM and Copeland Realty and their subsidiaries and affiliates, and an order prohibiting the destruction of documents, disgorgement of the Defendants' ill-gotten gains, and civil penalties.

## THE DEFENDANTS

7. **Charles P. Copeland,** age 64, resides in Redlands, California located in San Bernardino County. Charles Copeland is CWM's founder, 33% part-owner and president. Charles Copeland is also the 67% owner, founder and secretary of Copeland Realty and 50% owner, founder and director of Copeland Accountancy.

8. **Copeland Wealth Management, A Financial Advisory Corporation** ("CWM") is a California corporation with its principal place of business in Redlands, California located in San Bernardino County. CWM is registered with the Commission as an investment adviser under the name Copeland Wealth Management. As of May 31, 2011, CWM had approximately $144 million in assets under management comprised of $123 million invested primarily in mutual funds and $21 million invested primarily in real estate and real estate related loans through partnerships managed by Copeland Realty. CWM has approximately 770 advisory accounts.

9.  **Copeland Wealth Management, a Real Estate Corporation** ("Copeland Realty") is a California corporation with its principal place of business in Redlands, California located in San Bernardino County. Charles Copeland is part-owner, founder and secretary of Copeland Realty. Copeland Realty acts as the general partner for 21 partnerships with 191 limited partners that have invested in real estate and real estate related loans. Copeland Realty is not registered with the Commission in any capacity.

## RELATED ENTITY

10. **The Copeland Group, a Consulting and Accountancy Corporation**, ("Copeland Accountancy") is a California corporation with its principal place of business in Redlands, California. Copeland Accountancy is a privately-held accounting firm whose services include income tax preparation and real estate related services. Copeland Accountancy is equally owned by Charles Copeland and another individual. Most of the clients of CWM and Copeland Realty are existing clients of Copeland Accountancy and were referred by Copeland Accountancy. Copeland Accountancy is not registered with the Commission in any capacity.

## BACKGROUND

11. Charles Copeland is the co-owner, founder, officer, and director of the three companies involved in this matter: (1) The Copeland Group, a Consulting and Accountancy Corporation ("Copeland Accountancy") - a public accounting firm that specializes in income tax preparation and real estate related services; (2) Copeland Wealth Management ("CWM") - a registered investment adviser with approximately $144 million in assets under management as of May 31, 2011; and (3) Copeland Wealth Management, a Real Estate Corporation ("Copeland Realty") – an unregistered investment adviser and the general partner for 21 limited partnerships with approximately $48 million in initial capital contributions from CWM's 155 advisory clients and 36 non-advisory clients.

12. For approximately 20 years, Charles Copeland has provided income tax and accounting services to clients. During the course of providing such services, he developed a relationship with many of his clients who generally trusted him with their financial and accounting matters. Since 2003, Charles Copeland has operated CWM, an investment advisory business. CWM and Charles Copeland recommended to advisory clients that they invest in the limited partnerships operated by Copeland Realty. As a result, CWM's advisory clients invested approximately $48.4 million in 21 limited partnerships operated by Copeland Realty. As of May 31, 2011, the fair market value of advisory clients' interests in the limited partnerships was approximately $32 million, representing a loss of principal of $16 million or 33%.

13. An additional $9.6 million was invested in the 21 limited partnerships by non-advisory clients. As of May 31, 2011, the fair market value of the non-advisory clients' investments in the limited partnerships was approximately $7.2 million, representing a loss of principal of $2.4 million, or 25%. The general partner (Copeland Realty) contributed an additional $4.1 million to the 21 limited partnerships.

14. The limited partnership interests in the 23 limited partnerships are investment contracts and therefore securities pursuant to the federal securities laws.

## CWM AND COPELAND REALTY OFFERINGS

15. From approximately 2003 through May 31, 2011, Charles Copeland on behalf of CWM and Copeland Realty raised approximately $65 million in three types of limited partnerships involving both advisory and non-advisory clients: (1) Private Equity Partnerships – investments in privately-held companies, such as a surgery center; (2) Fixed Income Partnerships (the "Fixed Income Funds") – engaged in "the business of owning real estate backed loans and corporate loans and any activities that are related or incidental to that business;" and (3) Real

Estate Limited Partnerships (the "Real Estate Funds") – to purchase and lease commercial property such as office buildings. The following is a list of the 23 partnerships:

| General Partner & Fund | Number of Partners | Total Contributions |
|---|---|---|
| **CWM** | 18 | $3,305,000 |
| Copeland Private Equity One, L.P. ("CPE One") | 4 | 1,050,000 |
| Copeland Private Equity Two, L.P. ("CPE Two") | 14 | 2,255,000 |
| **Copeland Realty** | 192 | $62,041,910 |
| Copeland Fixed Income One, L.P. ("CFI One") | 23 | 6,080,203 |
| Copeland Fixed Income Two, L.P. ("CFI Two") | 23 | 4,704,329 |
| Copeland Fixed Income Three, L.P. ("CFI Three") | 18 | 3,410,753 |
| Copeland Properties One, L.P. ("CP 1") | 10 | 2,664,070 |
| Copeland Properties Two, L.P. ("CP 2") | 9 | 2,883,119 |
| Copeland Properties Three, L.P. ("CP 3") | 8 | 2,522,710 |
| Copeland Properties Four, L.P. ("CP 4") | 9 | 4,697,136 |
| Copeland Properties Five, L.P. ("CP 5") | 15 | 6,001,674 |
| Copeland Properties Six, L.P. ("CP 6") | 3 | 2,925,000 |
| Copeland Properties Seven, L.P. ("CP 7") | 8 | 1,254,888 |
| Copeland Properties Eight, L.P. ("CP 8") | 4 | 1,575,550 |
| Copeland Properties Nine, L.P. ("CP 9") | 12 | 3,673,713 |
| Copeland Properties Ten, L.P. ("CP 10") | 12 | 3,533,372 |
| Copeland Properties Eleven, L.P. ("CP 11") | - | - |
| Copeland Properties Twelve, L.P. ("CP 12") | 12 | 4,388,075 |
| Copeland Properties 13, L.P. ("CP 13") | - | - |
| Copeland Properties 14, L.P. ("CP 14") | - | - |
| Copeland Properties 15, L.P. ("CP 15") | 3 | 1,350,234 |
| Copeland Properties 16, L.P. ("CP 16") | 4 | 1,731,086 |

| General Partner & Fund | Number of Partners | Total Contributions |
|---|---|---|
| Copeland Properties 17, L.P. ("CP 17") | 4 | 4,818,860 |
| Copeland Properties 18, L.P. ("CP 18") | 15 | 3,827,138 |
| **Grand Total** | **210** | **$65,346,910** |

16. There is substantial investor overlap among the limited partnerships. In total, the investors consist of approximately 100 individuals and entities. In addition, CP 11, CP 13 and CP 14 were merged into other partnerships. Consequently, the number of limited partners and their capital contribution are reflected in other partnerships in the above table.

### FALSE AND MISLEADING STATEMENTS

**A. Fixed Income Funds: Misrepresentations Regarding the Use of Funds and Undisclosed Conflicts of Interest**

17. From 2006 through 2010, the Fixed Income Funds raised approximately $14 million from 70 investors. The limited partnership agreements ("LPAs") for the Fixed Income Funds restricted the use of funds to two specific purposes – real estate and corporate loans. For example, the LPAs for the Fixed Income Funds indicate the partnership may own "real estated [sic] backed loans and corporate loans" including "acquir[ing] loans and trust deeds." However, throughout the offering, Charles Copeland on behalf of Copeland Realty continued to raise additional funds and then used the funds in the Fixed Income Funds for purposes other than real estate and corporate loans. For example, the Fixed Income Funds lent $1,553,252 to CWM's advisory clients and Copeland Accountancy clients and lent $128,000 to Copeland Realty for management fees for the Real Estate Funds and distributions to limited partners in the Real Estate Funds.

///

///

18. In addition, the LPAs for the Fixed Income Funds required the pre-approval by the limited partners for any transaction that involved a conflict of interest by the general partner (i.e., Copeland Realty). However, Charles Copeland through Copeland Realty directed the Fixed Income Funds to lend the vast majority of the $14 million raised to affiliated entities without obtaining any pre-approval or disclosing this conflict of interest to the Fixed Income Funds' limited partners.

19. Specifically, the following table shows the undisclosed loans made to affiliates:

| Recipients of Undisclosed Loans made by Fixed Income Funds as of 5/31/2011 | Principal Balance |
|---|---|
| Copeland Property Real Estate Funds | $8,419,269 |
| Accounting Clients of Copeland Accountancy | $3,109,500 |
| Copeland Realty and Companies Affiliated with Charles Copeland | $2,790,040 |
| Loans to Nonpublic Companies that were also Owned by the Private Equity Funds | $1,526,686 |
| Advisory Clients of CWM and Copeland Accountancy Clients | $1,553,252 |
| Loans among Fixed Income Funds | $1,161,688 |
| Copeland Family Members | $111,000 |
| **Total** | **$18,671,435** |

20. The loans from the Fixed Income Funds to the Real Estate Funds allowed the Real Estate Funds to pay their operational expenses as well as continue their distribution payments, essentially a Ponzi-like scheme in which new investor funds were paid to existing investors.

///
///
///

**B. Fixed Income Funds: Charles Copeland Misrepresents that Investments are "Guaranteed"**

21. During 2008, Charles Copeland also sent e-mails to CWM's advisory clients falsely representing that investments in the Fixed Income Funds were "guaranteed." However, virtually all of the $14 million raised by the Fixed Income Funds was lent to companies or individuals affiliated with Charles Copeland, some of which are insolvent and thus unable to pay back these loans.

**C. Real Estate Funds: Misrepresentations Regarding the Use of Funds and Undisclosed Conflicts of Interest**

22. The LPAs for the Real Estate Funds stated "[t]he partnership will engage in the business of real property ownership and any activities that are related." However, from 2003 through May 2011, Charles Copeland through Copeland Realty continued to raise additional funds and then used the real estate partnerships funds for purposes other than owning real estate, including using approximately $1.8 million for unsecured loans from one real estate fund to another and approximately $500,000 for loans to accounting and advisory clients. Similar to the LPAs for the Fixed Income Funds, the LPAs for the Real Estate Funds required the pre-approval by the limited partners for any transaction that involved a conflict of interest by the general partner (i.e. Copeland Realty), which was not received. Consequently, Charles Copeland commingled and loaned funds to affiliates without the knowledge or consent of the limited partners in contradiction of the representations in the LPAs.

**D. Real Estate Funds: The Put Fund and Copeland Realty's Role as an Investment Adviser**

23. From approximately 2006 through 2008, Copeland Realty transferred approximately $5.7 million from 14 of the Real Estate Partnerships to CWM to trade put options, a speculative investment that has nothing to do with real estate. Specifically, Charles Copeland directed the transfer of limited partnership investments and lease payment buyouts to CWM. For example, Copeland Realty

received approximately $3.6 million from three lease payment buyouts for property owned by Funds CP 4 and CP 9. Under the terms of the LPAs, the Real Estate Funds were restricted to using the money from the buyouts to operate the properties owned or distribute the buyout payments to limited partners as a return of capital or distribution. Instead, from 2006 through 2008, Charles Copeland authorized the transfer of these monies to CWM to trade put option contracts. CWM sold "uncovered' put equity options; that is, CWM received a cash payment (called a premium) and in return agreed to purchase a specific amount of common stock at a specified price and date. As a result of this unauthorized trading strategy, the 14 Real Estate Funds lost approximately $800,000 of the $5.7 million invested.

24. Although Copeland Realty did not registered with the Commission as an investment adviser, it acted as an investment adviser under the federal securities laws.

E. **Real Estate Funds: Real Estate Commissions and Other Compensation Received by Copeland Realty**

25. From 2003 until 2008, at the direction of Charles Copeland, Copeland Realty received real estate commissions and other compensation of approximately $2.4 million in connection with the purchase and sale of real estate by the Real Estate Funds. Specifically, Copeland Realty received: (i) cash commissions totaling $756,570 and (ii) limited partnership interests in lieu of cash totaling $1,601,000 in five of the Real Estate Funds. Copeland Realty converted the limited partnership interests to cash by selling them to investors. However, with the exception of compensation relating to Fund CP 9, Copeland Realty and Charles Copeland failed to disclose the commissions and other compensation to the limited partners in the Real Estate Funds.

///

///

## FIRST CLAIM FOR RELIEF

## FRAUD IN THE OFFER OR SALE OF SECURITIES

### Violations of Section 17(a) of the Securities Act

### (Against All Defendants)

26. The Commission realleges and incorporates by reference paragraphs 1 through 25 above.

27. Defendants Charles Copeland, CWM and Copeland Realty, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

    a. with scienter, employed devices, schemes, or artifices to defraud;

    b. obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c. engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

28. By engaging in the conduct described above, Defendants Charles Copeland, CWM and Copeland Realty violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## SECOND CLAIM FOR RELIEF

## FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

### (Against All Defendants)

29. The Commission realleges and incorporates by reference paragraphs 1 through 25 above.

///

30. Defendants Charles Copeland, CWM and Copeland Realty, and each of them, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

    a. employed devices, schemes, or artifices to defraud;

    b. made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

31. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

32. Defendant Charles Copland was also a control person of CWM because he possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of CWM. Accordingly, pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), Defendant Copeland is also liable.

### THIRD CLAIM FOR RELIEF

### FRAUD WHILE ACTING AS AN INVESTMENT ADVISER

### Violations of Sections 206(1) and 206(2) of the Advisers Act

### (Against All Defendants)

33. The Commission realleges and incorporates by reference paragraphs 1 through 25 above.

34. Defendants Charles Copeland, CWM and Copeland Realty, and each of them, by engaging in the conduct described above, directly or indirectly, while acting as investment advisers, by use of the mails or means or instrumentalities of interstate commerce:

    a. with scienter, employed devices, schemes, or artifices to defraud clients or prospective clients; or

    b. engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon clients or prospective clients.

35. By engaging in the conduct described above, Defendants Charles Copeland, CWM and Copeland Realty violated, and unless restrained and enjoined will continue to violate, Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) & 80b-6(2).

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that the Defendants committed the alleged violations.

### II.

Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining Defendants Charles Copeland, CWM and Copeland Realty and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; and Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) & 80b-6(2).

///

### III.

Issue in a form consistent with Fed. R. Civ. P. 65, an order appointing a receiver over CWM and Copeland Realty and their subsidiaries and affiliates and prohibiting each of the Defendants from destroying documents.

### IV.

Order Defendants Charles Copeland, CWM and Copeland Realty to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

### V.

Order Defendants Charles Copeland, CWM and Copeland Realty to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and Section 209 of the Advisers Act, 15 U.S.C. § 80b-9.

### VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VII.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: October 17, 2011

David M. Rosen
Attorney for Plaintiff
Securities and Exchange Commission